

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LARRY STEPHENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:08-cv-870 |
| ) | |
| CARLOS GUTIERREZ, Secretary, ) | |
| United States Department of ) | |
| Commerce, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Defendants Gary Locke, Secretary of the United States Department of Commerce, and David Kappos, Director of the United States' Patent & Trademark Office (collectively "USPTO") have filed a Motion for Summary Judgment (Dkt. No. 70). After review of the motion and the briefs in support and in opposition, the Court finds that there are no genuine issues of material fact and that therefore pursuant to Fed. R. Civ. P. 56(c) Defendants are entitled to judgment as a matter of law.

## Background

Plaintiff Larry Stephens is a Caucasian male who is fifty-eight years old. He is an employee of the USPTO, and at all times relevant was an Information Technology Specialist, GS-13, in the System and Contracts Division of the Office of Patent Publication ("PUBS"). At all times relevant, Plaintiff's second-line supervisor was Richard Bawcombe, Director of PUBS. Bawcombe retired from the USPTO effective January 3, 2006. Bawcombe identifies himself as a Caucasian male, and he is sixty-two years old.

On May 17, 2004, Plaintiff applied for the position of Supervisory Program Control

1

Specialist ("SPCS"), GS-0301-14, in the Systems and Contracts Division of PUBS, pursuant to Vacancy Announcement PTO-04-064. Also on May 17, 2004, Autumn Kuei, a Management and Program Analyst with the Systems and Contracts Division of PUBS, applied for the same position. Kuei is a thirty-six year old Asian female. Bawcombe, as the Director of PUBS, was the selecting official for the SPCS position. A total of four candidates for the position, Tammy Koontz, Kimberly Terrell, Kuei, and Plaintiff, were deemed qualified for the position. Human Resources forwarded these applications to Jay Lucas, an information technology subject matter specialist, who was assigned to review the applications and rank them according to their qualifications.

Lucas ranked the candidates numerically weighing their applications against five elements deemed relevant to the position. Government's Motion for Summary Judgment Exhibit ("GEX") 4; GEX 6. The five elements included: (1) "knowledge of database management program techniques and concepts to develop and monitor systems operations;" (2) "knowledge of program management techniques and concepts in order to evaluate contractor's proposals and preparation of budget estimates;" (3) "skill in conducting qualitative and quantitative analysis that is used to develop technical, operational, and informative systems for Pubs and office wide functions;" (4) "ability to supervise;" and (5) "demonstrated ability to communicate with subordinate staff, peers, managers and subject matter specialist both orally and in writing." GEX 5; GEX 11. These five elements are expressly identified as relevant to the position in Vacancy Announcement PTO-04-064, which advertised the SPCS position. *See* GEX 6; GEX 11. For each element in the crediting plan, the candidates were ranked numerically as "Excellent," receiving six points; "Highly Qualified," receiving four points; or "Satisfactory," receiving two points.

Lucas rated Kuei more highly than Plaintiff on three of the five elements – the second, third, and fifth. GEX 5. In the other two elements, the first and fourth, Lucas rated Kuei and Stephens as equally qualified. *Id.* In no element did Lucas rate Stephens more highly than Kuei. *Id.* When Lucas completed ranking the candidates on May 3, 2004, he turned in his ratings to the Office of Human Resources. GEX 4 at ¶ 4. In August 2004, after interviewing all four qualified candidates, Bawcombe selected Kuei for the SPCS position. GEX 8; GEX 20 at 121. On the Merit Program Certificate documenting the selection of Kuei for the position, Bawcombe described the reasons for selecting Kuei: "Kuei has higher experience and knowledge levels in systems, while matching or exceeding contracting experience and knowledge, than other candidates." GEX 8. In his affidavit for the EEO investigation, Bawcombe explained that he selected Kuei for her "extensive experience working with enterprise network systems"; "her knowledge of the electronic data transfer systems in place between USPTO and its contractors, including systems security components"; her "broad projective management skills, as shown by her work on the development of the PGPub Program and the implementation of the security requirements for the data transfer systems"; and her "regular[] work[] with outside consultants and contractors." GEX 3 at 3. In comparison, Bawcombe understood Plaintiff's work experience to be "on a much smaller . . . scale" than Kuei's. GEX 3 at 3. Bawcombe stated that Plaintiff worked "almost exclusively with the micro-computer systems he developed and maintain[ed] for production monitoring and inventory controls," and had "very little experience with the PTO-wide macro systems or contracting, the other two major components of the Systems and Contracts Division." *Id.* Additionally, it was Bawcombe's understanding that Plaintiff "ha[d] not managed projects comparable in size or complexity to those managed by Kuei at the time of her selection. *Id.*

3

Michael Bleutge, the Acting SPCS in the months before Kuei's selection, stated in his affidavit that "it was clear that [Kuei] was the technical lead on all of th[e] databases" essential to the SPCS position and was the "primary interface" with one or more of the major contractors with the PUBS. GEX 2 at 33. Bleutge also stated that he felt "as if she were the natural successor to the [SPCS] job, whereas Mr. Stephens' work was not focused on these systems and contracts, but more so on the applications that were subordinate to them and used internally by the clients within [PUBS]." *Id.*

Kuei became the SPCS, Plaintiff's first-line supervisor, in August 2004, and remained in that position until she resigned from the USPTO on November 12, 2005.

In October 2005, Plaintiff received a "Commendable" rating for his performance in Fiscal Year ("FY") 2005. A rating of "Commendable" is the second highest rating of five possible ratings and is issued to an employee who has exhibited "a level of unusually good performance." GEX 26. The highest rating is "Outstanding."

## Procedural History

On August 25, 2008 Plaintiff filed a judicial complaint alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). In his complaint, Plaintiff first alleges that he suffered unlawful disparate treatment in 2004 on the basis of his race, gender, or age, when he was not selected for a GS-14 SPCS position in the USPTO's PUBS. Second, Plaintiff claims that from October 2004 to January 2006, he suffered unlawful retaliation for engaging in EEO activity, in that he allegedly was (1) not contacted directly by his supervisors for a period of time; (2) not assigned job-related travel; (3) not given new work

4

assignments; (4) denied a certain amount of official "EEO time" in which to complete EEO activities and threatened with being placed on absent without leave status for any additional amount of EEO time taken; (5) rated "Commendable," rather than "Outstanding," for FY 2005; and (6) not notified in advance that he would receive a "Commendable" rating. Finally, Plaintiff alleges that he suffered a hostile work environment on the basis of his race, gender, age, or prior EEO activity, in that he was not given new work assignments and was rated "Commendable" rather than "Outstanding" in FY 2005.

In an order dated June 5, 2009, the Court dismissed Plaintiff's race-, gender-, and age-based hostile work environment claims under Fed. R. Civ. P. 12(b)(1), and also dismissed three of Plaintiff's retaliation claims – that Plaintiff's supervisors did not contact him directly for a period of time; that Plaintiff was denied a certain amount of official "EEO time" in which to complete his EEO activities; and that Plaintiff was not notified in advance that he would be receiving a "Commendable" performance rating – under Fed. R. Civ. P. 12(b)(6). The remaining claims proceeded through discovery.

On December 14, 2009, Defendants filed this motion for summary judgment as to the remaining claims. A hearing on the motion was scheduled for January 29, 2010. At the hearing, counsel for Defendants was present; however, neither Plaintiff nor counsel for Plaintiff made an appearance. The Court took the motion under advisement and now issues this memorandum opinion.

## Standard of Review

A Court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). As here, where the non-moving party will bear the burden of proof at trial, the moving party's obligation in the summary judgment context is satisfied upon a showing that there is a lack of evidence to carry the non-moving party's burden on an essential element of that party's cause of action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393-94 (4th Cir. 1994). The non-moving party must go beyond the pleadings and mere allegations to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 324.

## Discussion

### Disparate Treatment

Plaintiff alleges that he has suffered unlawful disparate treatment on the basis of his race, gender, or age, when he was not selected for the SPCS position. Under the federal anti-discrimination statutes, a plaintiff must establish that he was the victim of intentional discrimination either through direct evidence or through circumstantial evidence via the framework set for by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Plaintiff claims in his Response in Opposition to the Motion for Summary Judgment ("P. Res.") that there is direct evidence of discrimination; however, the record is wholly void of any such evidence. Plaintiff has attempted to present hearsay statements from an individual named Joseph Jones, who is apparently unavailable, in support of his claim. Plaintiff alleges that if Jones was available he would testify that Bawcombe at one point stated that he "felt he would lose [Plaintiff] anyway." This statement is double hearsay evidence which would not be

admissible at trial and therefore cannot be considered on a motion for summary judgment. *See Maryland Highway Contractors Ass'n, v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) (internal citations omitted). Not only is the statement inadmissible hearsay, but the only person who allegedly heard the statement is Plaintiff, whose self-interest makes the validity of the statement even more questionable. Further, the statement is not direct evidence of discrimination. The statement appears to implicitly refer to Plaintiff's retirement, and as other courts have held, retirement is not synonymous with age. *See, e.g. Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993)); *Martin v. Bayland Inc.*, 181 F. App'x 422, 423-24 (5th Cir. 2006). Additionally, the statement allegedly made, specifically the word "anyway," actually implies that Bawcombe chose not to hire Plaintiff for reasons *other than his age*.

In addition to the hearsay statement by Jones, Plaintiff also alleges that Bawcombe was seeking a promotion, and an element which would be considered in his advancement was "diversity." Not only are these allegations mere speculation unsupported by the record, but even if they were substantiated, they are clearly not direct evidence of discrimination. Direct evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption. *Black's Law Dictionary* 636 (9th ed. 2009). This evidence presented by Plaintiff only supports his case if the Court *infers* that Bawcombe discriminated against Plaintiff and hired Kuei in order to get the promotion. It is therefore not direct evidence of discrimination.

Because Plaintiff cannot show direct evidence that any of the actions that he alleges were taken against him were motivated by discrimination, he must satisfy the burden shifting analysis set forth in *McDonnell Douglas*, 411 U.S. 792. Under this analysis, Plaintiff must first make out

7

a *prima facie* case of discrimination. A *prima facie* case of discrimination requires Plaintiff to establish the following: 1) that he was a member of a protected class; 2) he was subjected to an adverse employment action; 3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and 4) the position remained open or was filled by a similarly qualified applicant outside of the protected class. *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999), *abrogated on other grounds*. If a *prima facie* case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Assuming the employer meets this burden of production, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's reasons stated "were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (internal quotation marks and citation omitted).

In this case, the central issue is whether the reasons proffered by Bawcombe for his selection of Kuei over Plaintiff are pretextual or not. After a review of the record, the Court finds that Plaintiff has not demonstrated that a reasonable jury could find that the legitimate, nondiscriminatory reasons given by Bawcombe for selecting Kuei for the SPCA position are pretextual.

The Fourth Circuit has recognized two primary methods for demonstrating pretext in non-selection cases. First, the trier of fact may infer pretext where the plaintiff is in fact better qualified than the selectee. *See Gairola v. Com. of Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1287 (4th Cir. 1985). In determining whether a plaintiff in fact possessed superior qualifications to those of the selectee, "'[i]t is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." *Evans v. Technologies Applications and Serv. Co.*, 80 F.3d 954,

960-61 (4th Cir. 1996) (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)). Additionally, the burden is on the plaintiff to establish that he was a better qualified candidate for the promotion sought. *Gairola*, 753 F.2d at 1287.

In this case, the Court finds that Plaintiff can show neither that he was the better qualified candidate for the SPCS position nor any evidence to suggest that Bawcombe was not truthful about his reasons for selecting Kuei for the position.

Plaintiff cannot show that he was the better qualified candidate for the SPCS position as compared to Kuei. The reasons given by Bawcombe for hiring Kuei, including her program management experience, experience dealing with outside consultants and contractors, and her broad experience with the network and data systems used by the USPTO, made her more experienced and more qualified for the SPCS position than Plaintiff. While Kuei had worked with the PTO-wide macro systems and contracting -- which are two of the major components of the Systems and Contracts Division -- Plaintiff's work was focused on smaller applications and programs. Additionally, Plaintiff had not managed projects comparable in size or complexity to Kuei.

While Plaintiff attempts to argue that he is far more qualified for the position than Kuei, he can only point to his own statements from his deposition and his application for the position as support for his assertions. Plaintiff's personal belief that he is more qualified for the job, unsupported by any other evidence, holds little weight. While the Court does not deny that Plaintiff has many years of experience, including more years at the USPTO than Kuei, Plaintiff falls far short of convincing the Court that he was more qualified than Kuei for the specific position. In addition to Bawcombe's own statements about why he chose Kuei over Plaintiff, several other individuals involved with the selection process also came to the same conclusion.

9

Jay Lucas, an information technology subject matter expert, assisted in the selection process by independently reviewing the candidates' application packages before they were referred to Bawcombe. Lucas evaluated the four applicants, and gave them numerical ratings based on the factors in the crediting plan. Lucas rated Kuei more highly than Plaintiff on three of the five elements – the second, third, and fifth – and for none of the elements did Lucas rate Stephens more highly than Kuei. Additionally, Michael Bleutge, who was the acting SPCS for several months before Kuei's selection, testified during the administrative process as well as during his deposition that Kuei was the "natural successor" for the position given her experience. GEX 2 at 59. Bleutge stated during the administrative process that throughout the time he worked with Kuei, "it was clear that she was the technical lead on all of th[e] databases" essential to the SPCA position and was the "primary" interface with one of the major contractors with PUBS. *Id.* This was in comparison to Plaintiff whose work Bleutge felt "was not focused on these systems and contracts, but more so on the applications that were subordinate to them and used internally by the clients within [PUBS]. *Id.* The reasons given by Bawcombe for selecting Kuei are clearly supported by both Lucas' independent ratings of the candidates and Bleutge's perception of the candidates. Given all of this, the Court finds that there is simply no evidence in the summary judgment record to suggest that Plaintiff was demonstrably more qualified than Kuei.[1]

The trier of fact may also infer pretext where sufficient evidence exists to demonstrate that the employer was lying about the reasons for the non-selection. *See Heiko v. Colombo Savings Bank*, 434 F.3d 249, 259 (4th Cir. 2006) (internal citations omitted). The burden again

---

[1] While the Court finds that Plaintiff was not more qualified than Kuei, it notes that Plaintiff would still not be able to get by a motion for summary judgment if he could show that he was only slightly more qualified than Kuei. *See Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006) (holding that "when a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer.")

rests with the plaintiff to demonstrate that the legitimate, nondiscriminatory reasons articulated by the employer are false. *See id.* at 258. The Court finds that the summary judgment record does not support a finding that Bawcombe was lying about the reasons why Kuei was selected over Plaintiff. As discussed above, Bawcombe's selection of Kuei is not only well supported in the explanations he has consistently given, but also by the fact that other individuals close to the process, though independent in their analysis, echo Bawcombe's reasoning and his selection of Kuei as the more qualified candidate.

In contrast, there is no compelling evidence in the record to support Plaintiff's allegations of discrimination. Plaintiff has put forth what he claims are two pieces of evidence to support his claim of discrimination. First, Plaintiff has stated that he believes Bawcombe was applying for a Senior Executive Service ("SES") position and that Bawcombe selected Kuei for the SPCA position because it would increase Bawcombe's chances of being promoted. Plaintiff, however, can identify no evidence in the record to support the allegation that Bawcombe was seeking an SES position. In Bawcombe's affidavit from the EEO investigation, he stated that he has never applied for an SES position. Even if there was evidence to support Plaintiff's claim that Bawcombe was applying for a promotion, it would be mere speculation to assume that Bawcombe would in turn discriminate against Plaintiff. The Fourth Circuit has clearly established that "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (internal citations omitted).

Second, Plaintiff alleges that Bawcombe made the statement to Jones that he chose not to hire Plaintiff because he "felt he would lose [Plaintiff] anyway." As discussed earlier in this opinion, there are several reasons why this statement falls far short as evidence of discrimination.

11

The statement is not only inadmissible hearsay, but the person testifying to it is Plaintiff who clearly has an inherent bias in the case, which makes the validity of the statement highly questionable. Even if the statement was admissible, a statement about retirement is not direct evidence of age discrimination. *See, e.g. Scott*, 182 F. App'x at 526; *Martin*, 181 F. App'x at 423-24. Lastly, the statement appears to actually imply that it was for reasons other than his age that Plaintiff was not hired. Thus, the record not only supports Bawcombe's reasons for hiring Kuei, but Plaintiff has failed to present any meaningful evidence that Bawcombe was lying about his reasons for not selecting Plaintiff. Therefore, the Court finds that viewed in its totality, the evidence is insufficient for a reasonable jury to conclude that Plaintiff's race, gender, or age was a determinative influence on Bawcombe's decision to select Kuei for the SPCS position. *See Johnson v. Mechs. & Farmers Bank*, 309 F. App'x 675, 681, 2009 WL 188077 (4th Cir. 2009).

Retaliation Claims

In order to make out a *prima facie* case of retaliation, Plaintiff must demonstrate the following: 1) that he engaged in protected activity; 2) the employer took adverse employment action against him; and 3) a causal connection exists between the protected activity and the asserted adverse action. *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003).

One of the elements Plaintiff must prove is that he suffered an adverse employment action. In general, "not everything that makes an employee unhappy is an actionable adverse action." *Settle v. Baltimore County*, 34 F. Supp. 2d 969, 989 (D. Md. 1999), *aff'd*, 203 F.3d 822 (4th Cir. 2000). Actions that are "nothing more than routine, day-to-day work occurrences" are not actionable. *Green v. Fairfax County Sch. Bd.*, 832 F. Supp. 1032, 1040 (E.D. Va. 1993),

*aff'd*, 23 F.3d 400 (4th Cir. 1994). The Supreme Court has held, at least for private employees,[2] that the level of adversity necessary to make out a claim for retaliation is that "a reasonable employee would have found the challenged action materially adverse," which "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted).

The three actions which Plaintiff claims are adverse employment actions taken against him in retaliation for filing his EEO complaint in October 2004 are that Plaintiff was (1) rated "Commendable," rather than "Outstanding" for FY 2005; (2) purportedly excluded from job-related travel; and (3) purportedly not given new work assignments. Upon review of the record, the Court finds that none of these three actions rise to the level of an adverse employment action as required in a claim for retaliation.

During FY 2005 Plaintiff received a performance rating of "Commendable" rather than "Outstanding." Plaintiff alleges that he had consistently received an "Outstanding" over the course of his previous 20 years at the USPTO and that there was no reason for the lower rating. The Court finds that the "Commendable" rating is insufficient to qualify as an adverse employment action. The Fourth Circuit has, in a post *Burlington-Northern* decision, upheld a district court's ruling that a plaintiff's receipt of a less favorable performance evaluation is not materially adverse within the meaning of *Burlington-Northern* unless accompanied by the loss of some non-discretionary employment benefit. *See Parsons v. Wynne*, 221 F. App'x 197, 198-99 (4th Cir. 2007); *see also Nasis-Parsons v. Wayne*, 2006 WL 1555913, *5 (E.D. Va. 2006) (citing

---

[2] Defendant does not concede that the *Burlington Northern* standard applies to Government employers; however, the Court does not need to reach that issue as it finds that Plaintiff has failed to prove that he was subject to an adverse employment action even under this more lenient standard.

*James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004)). In *James* the Fourth Circuit specifically held that a poor performance evaluation, standing alone, does not constitute an adverse employment action. 368 F.3d at 377. The court explained, "a poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment."[3] *Id.*

Plaintiff alleges that the lower performance rating "resulted in a lower bonus, disqualified him from competitively competing for promotions, and had the detrimental, long-term impact of decreasing his retirement earnings." P. Res. However, the only evidence Plaintiff cites to support these claims is his own deposition testimony. He does not point to anything else in the record that can verify these claims. In fact, the record supports just the opposite finding, that the rating did not affect Plaintiff's salary, grade or awards eligibility. *See* GEX 23 at 32: 6-22; 33: 1-17. The Court finds that Plaintiff has not met his burden of establishing that he experienced the loss of any employment benefit to which he was entitled as a result of the rating. *See James*, 368 F.3d at 377-78.

Plaintiff also alleges that he was intentionally excluded from or denied work-related travel in retaliation for filing his EEO complaint. Specifically, Plaintiff alleges that he was excluded by Kuei from a trip to Horsham, Pennsylvania to set up and deploy USPTO computer systems.

There are several reasons why this claim falls far short of meeting the materially adverse element of a retaliation claim. First, the summary judgment record shows that Plaintiff was

---

[3] The Fourth Circuit has also held, prior to *Burlington Northern*, that the award of a "Successful" (or equivalent) performance rating does not constitute an adverse employment action, even where the rating is lower than in previous years. *Thompson v. Potomac Electric Power Co.*, 312 F.3d 645, 652 (4th Cir. 2002). In this case, Plaintiff received the rating of "Commendable" which is the second highest rating an employee can earn, and is a rating issued to an employee who has exhibited "a level of unusually good performance." GEX 26. "Commendable" is considered a good rating by USPTO management, including Kuei. *See* GEX 21 at 135, 137 ("I didn't downgrade him. Commendable is an unusually good rating . . . ."). Plaintiff also admitted at this deposition that his rating was a good one. GEX 9 at 285.

never explicitly excluded from travel to Horsham, Pennsylvania; he never requested to go to Horsham or on any other travel. Plaintiff is therefore complaining that he was not invited on the trip. While Plaintiff argues that had he traveled to Horsham, he would have received an "Outstanding" rating, Kuei clearly stated in her deposition that this was not the case. Kuei testified that Plaintiff's failure to travel to Horsham "had nothing to do with" his performance rating and explained that (1) Plaintiff "never made the request to go to Horsham"; (2) "there wasn't anything that involved his set of expertise" there; and (3) she took only "junior staff that had technical ability" with her, because it was "grunt work" that "did not require the services of someone at a G-13 level," as Plaintiff was. *See* GEX 21 at 141-144, 240-242. Moreover, Plaintiff has presented no evidence that the denial of travel was materially adverse to his employment. *See Edwards v. E.P.A.*, 456 F. Supp. 2d 72, 86 (D.D.C. 2006) ("[T]o be adverse, the denial of a travel or training opportunity must have a discernible, as opposed to a speculative, effect on the terms, conditions or privileges of one's employment.") There is nothing that Plaintiff has presented to the Court which indicates that the lack of an invitation to participate in certain travel had any consequences for or effect on Plaintiff's terms, conditions, or privileges of employment. The Court finds that the act which Plaintiff complains of would not dissuade a reasonable employee from making or supporting a charge of discrimination. At most this would qualify as a "trivial harm" or "minor annoyance[]," which are exactly what the Supreme Court warned would *not* constitute "material adversity" in *Burlington Northern,* 548 U.S. at 68.

Plaintiff's final retaliation claim is that he was given no new work assignments. The only support Plaintiff lends to this assertion is his own speculation as he points to nothing else in the record which supports this allegation. Plaintiff's performance plan and his FY 2005 performance rating both document the various tasks and assignments Plaintiff received and completed

throughout the rating period. GEX 26. Additionally, testimony of Kuei, Bawcombe, and Deborah Stevens who is the Director of PUBS and Plaintiff's wife, clearly demonstrates that Plaintiff was both given new assignments and was invited to participate in projects and meetings. *See* GEX 27 at 91-92, 115; GEX 21 at 74, 4-22; *see also* GEX 20 at 119. However, even if Plaintiff could support his characterization that he was given no new work assignments, he would still be unable to make out a claim for retaliation because he did not suffer any negative consequences. Plaintiff attempts to allege that he suffered from "decreased compensation, a significant decline in his level and responsibility, depressed opportunity for promotion, and great distress," but again only cites only to his own deposition in support of these claims. P. Res. at 20. The rest of the summary judgment record does not support these claims in the least. As mentioned previously, Plaintiff actually received a "Commendable" for FY 2005, the second highest rating an employee can receive. As such, Plaintiff has failed to make a *prima facie* case of retaliation with any of his claims because the Court finds that none of them rise to the level of being an adverse employment action.

Hostile Work Environment

Plaintiff also alleges that the facts which make up his claim for retaliation are sufficient to make out a *prima facie* case for hostile work environment. The courts have established that retaliatory harassment which creates a hostile work environment can constitute an adverse employment action for the purposes of establishing a claim under the antidiscrimination laws. *See, e.g. Von Guten v. Maryland*, 243 F.3d 858, 869-70 (4th Cir. 2001), *abrogated on other grounds by Burlington Northern*, 548 U.S. at 67-68 (2006)). However, this does not mean that the federal antidiscrimination laws are intended to be "a general civility code for the American

16

workplace." *Burlington Northern*, 548 U.S. at 68 (internal quotation marks and citation omitted). In order for Plaintiff to make out a claim for hostile work environment, he must present evidence of conduct "severe or pervasive enough" to create "an environment that a reasonable person would find hostile or abusive." *Von Guten*, 243 F.3d at 870 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). As the court in *Harris* described, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" the antidiscrimination statutes have been violated. *Harris*, 510 U.S. at 21.

For the Court to determine whether a work environment is "hostile" or "abusive," it looks at all circumstances including "the frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating, or merely offensive, and whether it unreasonably interferes with employee's work performance." *Harris*, 510 U.S. at 23. Plaintiff must demonstrate that the workplace was both subjectively and objectively hostile. The conduct must be severe and pervasive enough to create an objectively hostile or abusive work environment, and Plaintiff must subjectively perceive the environment to be abusive. *Id.* at 21.

While Plaintiff clearly subjectively perceived his work environment as abusive, the Court finds that no reasonable jury could conclude that the conduct was so severe and pervasive as to create an objectively hostile or abusive environment. Plaintiff claims that the following actions amount to a hostile work environment: he was (1) not contacted directly by his supervisors for a period of time; (2) not assigned job-related travel; (3) not given new work assignments; (4) denied a certain amount of official "EEO time" in which to complete EEO activities and threatened with being placed on absent without leave status for any additional amount of EEO time taken; (5) rated "Commendable," rather than "Outstanding" for FY 2005; and (6) not

17

notified in advance of any performance deficiencies. In his Opposition to Defendants' Motion for Summary judgment, he characterized his treatment as being "shun[ed] without any prospect of proper interpersonal interaction or professional opportunity." P. Res. at 15. This conduct that Plaintiff alleges is not of the type or the severity necessary to create a hostile workplace. The behavior was clearly neither physically threatening nor humiliating, and there is no evidence that it interfered with Plaintiff's work performance. Plaintiff continued to do his work and even received a "Commendable" rating for FY 2005. As such, no reasonable person could find that the conduct alleged by Plaintiff created a workplace "permeated with 'discriminatory intimidation, ridicule, and insult.'" *Harris*, 510 U.S. at 21. Plaintiff has therefore failed to show that he suffered from an objectively hostile or abusive work environment.

## Conclusion

For the foregoing reasons, the Court finds that there are no genuine issues of material fact, and thus the Defendant is entitled to summary judgment under Fed. R. Civ. P. 56(c).

March 15, 2010
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge